UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Sean Pierre Flattery, | ) | C/A No. 9:20-cv-02600-RBH-MHC |
| | ) | |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| v. | ) | |
| | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Sean Pierre Flattery (Flattery) filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Administrative Law Judge's (ALJ's) final decision denying his claim for disability insurance benefits (DIB) under the Social Security Act (Act). This case was referred to the undersigned for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). For the reasons that follow, the undersigned recommends that the ALJ's decision be remanded for further consideration.

## I.      BACKGROUND[1]

On August 1, 2018, Flattery protectively filed an application for DIB, alleging disability beginning July 31, 2014. R.pp. 183–84. The claim was denied initially on February 26, 2019, and upon reconsideration on August 28, 2019. R.pp. 76–89, 93–106. Flattery filed a written request for a hearing, and a hearing was held before an ALJ on February 11, 2020. Flattery, who was represented by counsel, and an impartial Vocational Expert, testified. R.pp. 34–72. The ALJ issued a decision on February 28, 2020, finding Flattery not disabled under the Act. R.pp. 14–33.

---

[1] Citations to the record refer to the page numbers in the Social Security Administration Record. *See* ECF No. 17.

An appeal to the Appeals Council was filed on March 10, 2020. R.pp. 12–13. The Appeals Council denied the request for review in a decision dated May 12, 2020, making the ALJ's decision final. R.pp. 1–6. This appeal followed.

Because this Court writes primarily for the parties who are familiar with the facts, the Court dispenses with a lengthy recitation of the medical history from the relevant period. To the extent specific records or information are relevant to or at issue in this case, they are addressed within the Discussion section below.

## II.    APPLICABLE LAW

### A.  Scope of Review

Jurisdiction of this Court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under § 405(g), judicial review of a final decision regarding disability benefits is limited to determining (1) whether the factual findings are supported by substantial evidence, and (2) whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). Accordingly, a reviewing court must uphold the final decision when "an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017) (internal quotation marks omitted).

"Substantial evidence" is an evidentiary standard that is not high: it is "more than a mere scintilla" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). A reviewing court does not reweigh conflicts in evidence, make credibility determinations, or substitute its judgment for that of the ALJ. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility

for that decision falls on the [ALJ]." *Id.* (alteration in original) (internal quotation marks and citation omitted). However, this limited review does not mean the findings of an ALJ are to be mechanically accepted, as the "statutorily granted review contemplates more than an uncritical rubber stamping of the administrative action." *Howard v. Saul*, 408 F. Supp. 3d 721, 725–26 (D.S.C. 2019) (quoting *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969)).

### B.  Social Security Disability Evaluation Process

To be considered "disabled" within the meaning of the Social Security Act, a claimant must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience, and functional capacity, and which has lasted or could reasonably be expected to last for a continuous period of not less than twelve months. *See* 42 U.S.C. § 423. The Social Security Administration established a five-step sequential procedure in order to evaluate whether an individual is disabled for purposes of receiving benefits. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015) (outlining the questions asked in the five-step procedure). The burden rests with the claimant to make the necessary showings at each of the first four steps to prove disability. *Mascio*, 780 F.3d at 634–35. If the claimant fails to carry his burden, he is found not disabled. *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). If the claimant is successful at each of the first four steps, the burden shifts to the Commissioner at step five. *Id.*

At the first step, the ALJ must determine whether the claimant has engaged in substantial gainful activity since his alleged disability onset date. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the ALJ determines whether the claimant has an impairment or combination of impairments that meet the regulations' severity and duration requirements. *Id.* §§ 404.1520(c),

416.920(c). At step three, the ALJ considers whether the severe impairment meets the criteria of an impairment listed in Appendix 1 of 20 C.F.R. part 404, subpart P (the "Listings") or is equal to a listed impairment. If so, the claimant is automatically eligible for benefits; if not, before moving on to step four, the ALJ assesses the claimant's residual functional capacity (RFC).[2] *Id.* §§ 404.1520(d), (e), 416.920(d), (e); *Lewis*, 858 F.3d at 861.

At step four, the ALJ determines whether, despite the severe impairment, the claimant retains the RFC to perform his past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the ALJ finds the claimant capable of performing his past relevant work, he is not disabled. *Id.* §§ 404.1520(f), 416.920(f). If the exertion required to perform the claimant's past relevant work exceeds his RFC, then the ALJ goes on to the final step.

At step five, the burden of proof shifts to the Social Security Administration to show that the claimant can perform other jobs existing in significant numbers in the national economy, considering the claimant's age, education, work experience, and RFC. *Id.* §§ 404.1520(g), 416.920(g); *Mascio*, 780 F.3d at 634–35. Typically, the Commissioner offers this evidence through the testimony of a vocational expert answering hypotheticals that incorporate the claimant's limitations. *Mascio*, 780 F.3d at 635. "If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Id.*

## III.    DISCUSSION

### A.  ALJ's findings

The ALJ employed the statutorily-required five-step sequential evaluation process to determine whether Flattery was disabled from the alleged onset date of July 31, 2014. The ALJ found, in pertinent part:

---

[2] The RFC is "the most the claimant can still do despite physical and mental limitations that affect her ability to work." *Mascio*, 780 F.3d at 635 (internal quotation marks and citations omitted).

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2019.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of July 31, 2014 through his date last insured of December 31, 2019 (20 CFR 404.1571, et seq.).

3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the lumbar spine, cervical disc herniation, and obesity (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can frequently sit, stand, and walk. He can occasionally climb ramps and stairs, but never ladders, ropes, and scaffolds. He can occasionally stoop, kneel, crouch, and crawl. Additionally, the claimant must avoid concentrated exposure to hazards.

6. Through the date last insured, the claimant was capable of performing past relevant work as a business service sales agent and as a vice president. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from July 31, 2014, the alleged onset date, through December 31, 2019, the date last insured (20 CFR 404.1520(f)).

R.pp. 20–29.

**B.  Flattery's contentions of error**

Flattery presents three alleged errors committed by the ALJ in her decision. First, he argues that the ALJ erred in evaluating the medical opinions of treating and non-examining physicians. ECF No. 20 at 12–19. Second, he argues the ALJ's evaluation of his symptoms of pain was not supported by substantial evidence. ECF No. 20 at 19–21. Third, he maintains that the ALJ's determination at Step Four of the evaluation process was not supported by substantial

evidence. ECF No. 20 at 21–22.

### 1. Medical Opinion evaluation

Effective March 27, 2017, numerous social security regulations and social security rulings (SSRs)[3] were amended or superseded, making the new regulations applicable to claims filed on or after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017), *corrected by* 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017). Because Flattery's claim for benefits was filed after March 27, 2017, the ALJ was required to evaluate the application under 20 C.F.R. §§ 404.1520c and 416.920c.

Under the new regulations, the ALJ is not to defer to or give any specific weight to medical opinions based on their source.[4] 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather, ALJs are instructed to consider and evaluate the persuasiveness of the opinion evidence by considering the following factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(b), (c), 416.920c(b), (c). Supportability and consistency are the most important factors to consider, and an ALJ must explain how these factors are considered in the determination or decision. *See* 20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2). The ALJ may, but is not

---

[3] Social Security Rulings, or "SSRs," are "interpretations by the Social Security Administration of the Social Security Act." *Pass v. Chater*, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995). They do not carry the force of law but are "binding on all components of the Social Security Administration," 20 C.F.R. § 402.35(b)(1), as well as on ALJs when they are adjudicating Social Security cases. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009).

[4] This effectively does away with the so called "Treating Physician Rule" under the provisions of 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2), whereby an ALJ was directed to give controlling weight to the opinion of a treating physician if it was well supported by medically-acceptable clinical and laboratory diagnostic techniques and was not inconsistent with the other substantial evidence of record. In addition, 20 C.F.R. §§ 404.1527(c)(5) and 416.927(c)(5) provided that ALJ's should "generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a medical source who is not a specialist."

required to, explain how the other factors are considered.[5] 20 C.F.R. §§ 404.1520c(b)(2), (c), 416.920c(b)(2), (c).

In evaluating the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s),[6] the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). "Supportability" denotes "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 5853, 2017 WL 168819 (Jan. 18, 2017); *see also* 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1).

As for the consistency factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). In other words, "consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Revisions to Rules*, 82 Fed. Reg. at

---

[5] This represents another significant departure from the requirements of 20 C.F.R. §§ 404.1527(c) and 416.927(c), whereby, if the ALJ declined to accord controlling weight to the treating physician's opinion, he was to weigh the medical opinions of record based on all of the following factors: (1) examining relationship; (2) treating relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors that tended to support or contradict the opinion.

[6] The new regulations define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities to perform the physical, mental, or other demands of work activity or to adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). The new regulations also define a "prior administrative medical finding" as a "finding, other than the ultimate determination about whether [a claimant is] disabled, about a medical issue made by [the Social Security Administration's] Federal and State agency medical and psychological consultants at a prior level of review[.]" 20 C.F.R. § 404.1513(a)(5).

5853; *see also* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(1).

Although these amended regulations do away with the idea of assigning "weight" to medical opinions, the ALJ's reasons for finding the opinion of a medical source unpersuasive still must be supported by substantial evidence. The United States Court of Appeals for the Fourth Circuit has repeatedly stated that "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Lewis*, 858 F.3d at 869 (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)); *see also Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 98 (4th Cir. 2020). Moreover, an ALJ continues to have an obligation to "include a narrative discussion describing how the evidence supports each conclusion." *Monroe v. Colvin*, 826 F.3d 176, 190 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636); *see also* SSR 96-8p, 1996 WL 374184 at *7 (S.S.A. July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."). Similarly, remand may be appropriate when the courts are left to guess at how the ALJ arrived at the conclusions and meaningful review is frustrated. *Mascio*, 780 F.3d 636–37. The ALJ must "build an accurate and logical bridge from the evidence to [her] conclusion." *Monroe*, 826 F.3d at 189 (citation omitted).

Here, Flattery argues the ALJ's persuasiveness analysis of the state agency opinions and the opinions of Flattery's treating physicians—Dr. Wildstein, Dr. McGough, and Dr. Uderitz—was erroneous and lacked support. Flattery generally argues that the ALJ failed to build an accurate and logical bridge for this Court to follow while reviewing the ALJ's evaluations of the medical opinions under the substantial evidence standard of review. The Court agrees with

Flattery's arguments regarding the ALJ's assessment of the state agency opinions and Dr. Wildstein's opinion and recommends remanding for the following reasons.

### a. State agency opinions[7]

The ALJ first assessed the opinions of the state agency medical consultants. Specifically, the ALJ considered the opinions of Dr. Jean Smolka, a non-examining source, who provided an opinion at the initial level on February 1, 2019, and Dr. Sannagai Brown, also a non-examining source, who provided an opinion at the reconsideration level on August 1, 2019. Dr. Smolka opined initially that Flattery was limited to light work. R.pp. 76–89. Dr. Brown opined on reconsideration that Flattery was further limited to sedentary work based on evidence documenting increased pain. R.pp. 93–106. The ALJ found Dr. Smolka's opinion persuasive but not the more recent opinion of Dr. Brown, stating:

> I am persuaded by the opinion of state agency consultant Dr. Smolka (Ex. 1A). This opinion is supported by a detailed explanation with citations to the record (Ex. 1A). Additionally, this opinion is consistent with the longitudinal record which generally describes normal gait, normal range of motion, full strength, no acute distress, negative straight leg raises, and ambulating without antalgia or an assistive device (Ex. 1F/3; 2F/22; 3F/3; 5F/15-16, 20, 26; 6F/1, 3, 7, 12; 7F/4; 14F/3-4; 11F/5, 10; 12F/17; 14F/4).
>
> As for the opinion of state agency consultant Dr. Brown, I am unper[s]uaded (Ex. 5A). Although Dr. Brown supported his opinion with citation to the record, Dr. Brown did not have the opportunity to review evidence present at the hearing level (Ex. 5A). Additionally, the opinion is unsupported by Dr. Brown's citation that the claimant has 5/5 bilateral strength (Ex. 5A). The opinion is also inconsistent with the longitudinal evidence which generally shows normal gait, normal range of

---

[7] As noted above, the new regulations now define "findings . . . about a medical issue made by Federal and State agency medical and psychological consultants at a prior level of review" as "prior administrative medical finding[s]," instead of "medical opinions." 20 C.F.R. § 404.1513(a)(5). This is because Federal and State agency medical and psychological consultants are "highly qualified and experts in Social Security disability evaluation," who often make "administrative findings about the medical issues" on behalf the Commissioner (including, for example, the claimant's residual functional capacity) at the initial and reconsideration levels of administrative review. 20 C.F.R. § 404.1513a(a)(1), (b)(1). Regardless, as ALJs must consider this evidence in the same manner as medical opinions, *see* 20 C.F.R. § 404.1520c, the undersigned will refer to the prior administrative findings as "opinions" in this decision.

motion, full strength, no acute distress, negative straight leg raises, and ambulating without antalgia or an assistive device (Ex. 1F/3; 2F/22; 3F/3; 5F/15-16, 20, 26; 6F/1, 3, 7, 12; 7F/4; 14F/3-4; 11F/5, 10; 12F/17; 14F/4). Furthermore, it is consistent with the claimant's statements that he does not use an assistive device as well as the treatment record showing gaps in treatment.

R.p. 27.

At first, the ALJ's discussion of both state agency opinions appears to adhere to the new regulation requirements, as the ALJ articulated her consideration of the supportability and consistency factors. *See* 20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2). However, although there is no bright line rule for articulating the consideration of these factors, the undersigned questions in this instance, as explained further below, whether dedicating a single sentence to each factor provides a "narrative discussion" that adequately explains the ALJ's reasoning with regard to Dr. Smolka's opinion. *See* 20 C.F.R. § 404.1520c(b)(2) ("[W]e will *explain* how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." (emphasis added)); *Monroe*, 826 F.3d at 191 (noting the ALJ's failure to include a narrative discussion describing how the evidence supports each conclusion precluded meaningful review where the ALJ gave conclusory analysis of medical opinions and did not adequately *explain* his reasoning). Indeed, a closer inspection of the ALJ's stated reasons reveals some contradictions that leave the undersigned unable to understand how the ALJ ultimately arrived at her conclusions without an adequate explanation of the supportability and consistency factors.

Here, as to the supportability factor, the ALJ found Dr. Smolka's opinion persuasive merely because it was "supported by a detailed explanation with citations to the record." R.p. 27. This articulated reason is *equally applicable* to Dr. Brown, as noted by the ALJ, yet the ALJ did not find Dr. Brown's opinion persuasive. The ALJ attempted to reconcile this apparent

contradiction in noting that, although Dr. Brown supported his opinion with citations to the record, he did not have the opportunity to review the evidence present at the hearing level. Again, however, this articulated reason is equally applicable to both. The ALJ's reason for finding Dr. Brown's opinion unpersuasive are equally applicable to Dr. Smolka's opinion—that is, Dr. Smolka did not have the opportunity to review the evidence present at the hearing level either. Consequently, the ALJ's articulated reasons as to the supportability factors for both Dr. Smolka and Dr. Brown appear irreconcilable, as it is unclear why Dr. Brown's opinion was discounted, but not Dr. Smolka's opinion.

Another challenge presented by the ALJ's persuasiveness evaluation is the fact that Dr. Smolka issued her opinion at the initial level, six months *before* Dr. Brown's opinion. Of note, additional records were added to Flattery's file in that six-month interim, which Dr. Brown had the opportunity to review at the reconsideration level. *See* R.pp. 94–98. Dr. Brown ultimately opined that Flattery was more limited than what was found at the initial level. R.pp. 102–04. Thus, while the ALJ's reasoning—that a state agency opinion is not as persuasive when that opinion is not based on more recent evidence/a full record—generally makes logical sense, the ALJ's application of that reasoning somehow counterintuitively excluded Dr. Brown's opinion, which was based upon or at least created after more evidence was added to the record. *See* 20 C.F.R. § 404.1520c(c)(5) ("When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive."); *Revisions to Rules*, 82 Fed. Reg. at 5857 ("We also recognize that new evidence submitted after an MC [medical consultant] or PC [psychological consultant] provided a prior administrative medical finding may affect how

persuasive that finding is at subsequent levels of adjudication."). In short, while the articulated reasons for the ALJ's persuasiveness determination for both opinions are valid on their face, the ALJ's ultimate application here produced a result that makes little sense.

As to the consistency factor, the ALJ found Dr. Smolka's opinion was consistent with the longitudinal record, while Dr. Brown's opinion was not consistent with the longitudinal evidence of record or findings on exam. Notably absent in the ALJ's articulation here is any discussion of the consistency with other medical opinions in the record. The regulations contemplate that an ALJ will consider other medical opinions in the record when analyzing the consistency factor. *See* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) ("The more consistent a medical opinion . . . is with the evidence from *other medical sources* and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." (emphasis added); 20 C.F.R. § 404.1502(d) ("Medical source means an individual who is licensed as a healthcare worker . . ."); 20 C.F.R. § 404.1513(a)(2) ("A medical opinion is a statement *from a medical source* about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions[.]" (emphasis added)); *Revisions to Rules*, 82 FR 5844-01 at 5854 ("Our final rules provide an appropriate framework to evaluate situations when multiple medical sources provide medical opinions that are not consistent."). Both opinions here appear to be inconsistent with each other. However, Dr. Brown's opinion appears to be more consistent with the opinions of Flattery's treating physicians, while Dr. Smolka's opinion appears to be less consistent.

Indeed, it would appear that Dr. Smolka's opinion, not Dr. Brown's, is the outlier. The ALJ did not explain why she found Dr. Smolka's opinion more persuasive, even though the consistency factor as it relates to other medical opinions appears to cut against Dr. Smolka's opinion. There very well may be a good reason for this, but the ALJ did not articulate it. This

highlights the necessity for a narrative discussion in this instance, instead of a single sentence, that adequately explains the ALJ's reasoning—especially in a situation where, as here, the only opinion the ALJ finds persuasive appears to be inconsistent with other opinions in the record. *See Revisions to Rules*, 82 Fed. Reg. at 5854 (noting "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim").

Ultimately, the ALJ failed to "build an accurate and logical bridge" from the evidence to her conclusions, leaving the undersigned to guess at why the ALJ found Dr. Smolka's opinion persuasive while simultaneously finding Dr. Brown's opinion unpersuasive. *See Monroe*, 826 F.3d at 189. On remand, the ALJ may be able to remedy this by providing a narrative discussion that more thoroughly explains her persuasiveness evaluation of these two opinions.

### b. Dr. Wildstein's opinion

Dr. Wildstein provided a medical source statement on December 27, 2019, opining that Flattery had an unlimited ability to sit and reach, but was not able to stand/walk for more than one hour, lift more than fifteen pounds, and should not climb or stoop at all. R.p. 676. The ALJ assessed this opinion as follows:

> Regarding the opinion of Dr. Wildstein, I am unpersuaded (Ex. 16F). This opinion is not supported by recent low back impairment treatment, as Dr. Wildstein has not treated the claimant for his low back impairments since September 2018. It is also unsupported by Dr. Wildstein's treatment record indicating normal strength, negative straight leg raises, and noting that the claimant ambulates without antalgia or an assistive device (Ex. 6F/1-2, 7, 11-12; 12F/2, 5, 17). The opinion is also inconsistent with the longitudinal evidence, which generally describes normal gait and range of motion (Ex. 1F/3; 3F/3; 2F/22; 5F/16, 26; 14F/3; 11F/5). Moreover, it is inconsistent with the claimant's testimony that he has no problems reaching.

R.p. 27. As with the state agency opinions, the ALJ's persuasiveness evaluation of Dr. Wildstein's opinion is lacking, warranting remand.

As to the supportability factor, the ALJ found that Dr. Wildstein's opinion regarding Flattery's abilities was not supported by recent low back impairment treatment, noting that Dr. Wildstein had not treated Flattery for low back impairments since 2018. As an initial matter, it is unclear to what "recent low back impairment treatment" the ALJ is referring or why this treatment or lack thereof does not support Dr. Wildstein's opinion. The ALJ appears to suggest that Dr. Wildstein's opinion is unsupported because he has not treated Flattery for low back impairments recently, *i.e.* not since September 2018. This statement seems to imply that Flattery's low back impairments were not that severe, otherwise he would have continued treatment with Dr. Wildstein after September of 2018. This is a somewhat misleading characterization of Flattery's treatment with Dr. Wildstein.

First, following a second kyphoplasty surgery in November 2017, Dr. Wildstein recommended a discography to help isolate the pain generator as Flattery was described as "at the end of his rope" and considering spinal surgery. R.p. 565. However, Flattery's insurance company had not approved the discography, and Dr. Wildstein did not have additional treatment options to offer. R.pp. 566, 568–69. Indeed, at the September 2018 follow-up, which the ALJ references, Dr. Wildstein noted that Dr. McGough (Flattery's primary care physician) provided documentation stating that Flattery's anxiety was treated, but he also noted that Flattery had not done CBT (cognitive behavioral therapy) or six months of NSAIDs, which were all pre-requisites for the discography procedure under Flattery's insurance. R.p. 568. Thus, the lack of further treatment with Dr. Wildstein for Flattery's low back pain after September 2018 may have less to do with the severity of Flattery's impairments than with insurance requirements for Flattery to continue treating with Dr. Wildstein.[8]

---

[8] Moreover, Flattery continued to seek treatment for his lower back. In April 2019, Flattery inquired with Dr. McGough regarding non-opioid pain relievers for low back pain, noting that he

Indeed, while Flattery did not return to Dr. Wildstein for evaluation specifically for his low back after September 2018, he continued to receive treatment from Dr. Wildstein. For example, Dr. Wildstein issued a disabled placard in October 2018, citing Flattery's inability to walk one hundred feet non-stop without aggravating his condition. R.p. 659. Flattery returned to Dr. Wildstein in August 2019 for evaluation of a new issue regarding right knee pain. Dr. Wildstein diagnosed Flattery with lateral condylar insufficiency fracture with lateral collateral ligament strain. R.pp. 646–47. The exam documented ambulation with right sided antalgia. R.p. 647. These records relate to the supportability factor of Dr. Wildstein's opinion regarding Flattery's inability to stand/walk for more than one hour, lift more than fifteen pounds, and climb or stoop, which it appears the ALJ ignored by implying that Dr. Wildstein's treatment with Flattery in September 2018 was the last significant date in the record. *See Joseph M. v. Kijakazi*, No. 1:20-CV-3664-DCC-SVH, 2021 WL 3868122, at *13 (D.S.C. Aug. 19, 2021) ("However, because the ALJ appears to have neglected Dr. Smith's continued treatment—a factor arguably relevant to the supportability analysis—the undersigned is constrained to find that substantial evidence does not support his evaluation of the opinion."), *report and recommendation adopted sub nom. Maness v. Kijakazi*, No. 1:20-CV-3664-DCC, 2021 WL 3860638 (D.S.C. Aug. 30, 2021).

---

was still treating with Dr. Wildstein. R.p. 594. Flattery reported that he "[h]as been trying to stay active with exercise, but feels fatigued with exercise." R.p. 594. He was prescribed Mobic for pain. R.p. 594. After treatment prescribed by Dr. Wildstein did not benefit Flattery, he sought a second opinion. Office notes from Dr. Nemeth, who evaluated Flattery in November 2019, documented a pain level of nine out of ten, positive tenderness over the cervical spine on the left at C4-5, tenderness over the paraspinal region at L5 bilaterally, pain with lumbar and cervical range of motion, limited lumbar extension, and pain with facet loading. R.pp. 627–29, 633. Dr. Nemeth documented no improvement with physical therapy and advised against steroid use given Flattery's history of two compression fractures. R.p. 629. Dr. Nemeth recommended an updated MRI, nerve blocks, and, depending on the results of nerve blocks, possible radiofrequency ablation. R.p. 629.

In further considering the supportability factor, the ALJ also found Dr. Wildstein's opinion was unsupported by his own treatment record which indicated normal strength, negative straight leg raises, and noted that Flattery ambulates without antalgia or an assistive device. R.p. 27 (citing R.pp. 554–55, 560, 564–65, 640, 643, 655). However, in doing so, the ALJ seemed to ignore other portions of Dr. Wildstein's notes, which documented that Flattery was tender to palpation (TTP) over his lumbar spine posteriorly and had pain on lumbar extension, and the vitals portion of office notes that regularly noted Flattery had a pain level of ten out of ten on exams. R.pp. 554, 556, 560, 564, 566, 568, 639–43. Dr. Wildstein's treatment record also included facet injections which only provided forty-eight hours of pain relief, surgical intervention (L1 kyphoplasty), medication management, and diagnostic procedures. R.pp. 558, 560, 562, 564–66, 568, 574, 640. While it is the ALJ's job to weigh the medical evidence, the ALJ should not cherry-pick certain findings in a Doctor's notes and use those as a basis to discount the Doctor's opinion while ignoring other notes that tend to support the Doctor's opinion. *See Lewis*, 858 F.3d at 869 (vacating an ALJ's decision in part because the ALJ improperly "cherrypick[ed] facts" where, "[i]n the same medical records containing the 'normal' findings relied upon by the ALJ, the physician also noted that Lewis presented with 'stabbing, burning[,] throbbing and tingling, [and] constant pain'" among other symptoms, and that she was "given a steroid injection into her shoulder"). Here, the ALJ did not explain why she chose to accept the findings that undercut Dr. Wildstein's opinion and to reject the findings that supported it.

Finally, as to the consistency factor, the ALJ found Dr. Wildstein's opinion was not consistent with the longitudinal evidence of record. Notably absent, however, is any discussion of the consistency of Dr. Wildstein's opinion with other opinions in the record. Moreover, the ALJ noted that Dr. Wildstein's opinion was "inconsistent with [Flattery's] testimony that he has

no problems reaching." R.p. 27. However, Dr. Wildstein specifically opined that Flattery is able to "reach with both hands without restrictions." R.p. 676. It is unclear how these two statements are inconsistent, and the undersigned is left to speculate.[9]

As with the state agency opinions, the ALJ failed to "build an accurate and logical bridge" from the evidence to her conclusions, leaving the undersigned to guess at why the ALJ found Dr. Wildstein's opinion unpersuasive. *See Monroe*, 826 F.3d at 189. Accordingly, remand is warranted.

### c. Dr. McGough's and Dr. Uderitz's opinions

At Step Two, the ALJ considered the effects of Flattery's severe and non-severe impairments. Relevant here, the ALJ determined that Flattery's generalized anxiety disorder did not cause more than minimal limitations to Flattery's ability to perform basic mental work activities and was therefore a non-severe impairment. The ALJ then discussed the medical opinions of the state agency consultants and Flattery's treating doctors with regard to mental impairments. R.p. 22. The ALJ found the state agency opinions persuasive, while the opinions of Dr. McCough and Dr. Uderitz were unpersuasive:

> Accordingly, I am generally persuaded by the opinion of state agency consultants Dr. Clausen and Dr. Koontz, which noted that the claimant did not have a severe

---

[9] The ALJ also repeatedly references that Flattery does not use an assistive device to walk, using this to discount Dr. Wildstein's and Dr. Brown's opinions and find Dr. Smolka's opinion persuasive. However, the ALJ does not explain how not using an assistive device bears any nexus to Flattery's main complaint of debilitating chronic low back pain. Indeed, at the hearing, Flattery explained that he did not use a cane "because the pain I have is – it's pressure. So, when I can sit, the pressure [is] relieved. A walker, you know, if I had a heavy-duty one to lean on[], that might help. But a cane doesn't help. A cane's more for balance." R.p. 45. Notably, Dr. Wildstein did not prescribe Flattery an assistive walking device; instead, he issued a disabled placard for Flattery's vehicle because walking for long distances aggravated Flattery's condition and caused him pain. R.p. 659. Thus, it is unclear how the lack of an assistive device—which would not help Flattery's pain—shows that Dr. Wildstein's (or Dr. Brown's) opinion is unsupported and/or inconsistent. Moreover, it is equally inexplicable that the disabled placard—which was issued by Dr. Wildstein in an effort to reduce Flattery's pain—is not mentioned by the ALJ at all, as this would appear to be evidence that speaks to the consistency factor.

mental impairment (Ex. 1A; 5A). These opinions are supported by citation to the record and a detailed review of the record. They are also consistent with the objective evidence, which generally describe the claimant as alert, oriented, calm and cooperative with good hygiene and grooming, good judgment, and a normal memory (Ex. 1F/37; 2F/5, 13, 22, 28; 3F/3; 5F/21, 26; 9F/4; 12F/3; 17F/2). Additionally, they are consistent with the treatment records, which described the claimant's anxiety as "well controlled" (Ex. 5F/4, 23).

Regarding the treating source statements submitted by Dr. McGough and Dr. Uderitz/Jordan Lane, PA-C, I am unpersuaded (Ex. 13F; 18F). Dr. McGough did not provide a detailed opinion as to what the claimant can do during a normal workday and workweek. Dr. McGough did not support his opinion with a mental status examination or review of other mental status examinations. Dr. Uderitz and Mr. Lane's opinion is unsupported by their examination in which the claimant was noted as alert, oriented, and cooperative with intact insight and judgment, logical thought process, intact attention and concentration, average fund of knowledge, and intact memory (Ex. 17F). Additionally, it was given in January 2020, when the claimant had only been under their care since December 2019 (Ex. 18F). Furthermore, the opinions of both Dr. McGough and Dr. Uderitz/Mr. Lane are inconsistent with the longitudinal objective evidence which generally describe the claimant as alert, oriented, calm, and cooperative with good hygiene, appropriate mood and affect, intact memory, normal thought process, normal thought content, good judgment, normal insight, and an average fund of knowledge (Ex. 1F/37; 2F/5, 13, 22, 28; 3F/3; 5F/21, 26; 9F/4; 12F/3; 17F/2). Furthermore, it is inconsistent with treatment record noting the claimant's anxiety as "well controlled" (Ex. 5F/4, 23).

R.p. 22.

The undersigned finds that Flattery has failed to show error here. The ALJ properly adhered to the new regulations, and substantial evidence supports her fact-finding. Specifically, the ALJ assessed the persuasiveness of the opinions and explained how the factors of supportability and consistency were considered. *See* R.pp. 22; 20 C.F.R. § 404.1520c(b)(2), (c)(1)–(2). Indeed, Flattery concedes that the ALJ addressed the supportability and consistency factors. *See* ECF No. 17 at 23. Thus, it appears Flattery just disagrees with the ALJ's assessment, which is not a basis for remand.

Nevertheless, Flattery clarifies in his Reply that he is not challenging the ALJ's finding that his generalized anxiety disorder is non-severe; rather, he argues that Dr. McGough's and Dr.

Uderitz's opinions support his allegations that he cannot perform sustained work or return to his past skilled work because of ongoing pain. *See* ECF No. 22 at 4. That is to say, although these opinions may not be persuasive for purposes of a severity finding with regard to Flattery's general anxiety disorder, the opinions nevertheless may serve as consistency evidence in considering the persuasiveness of Dr. Smolka's, Dr. Brown's, and Dr. Wildstein's opinions with regard to Flattery's underlying lower back pain. *See* 20 C.F.R. § 404.1520c(c)(2). It is not clear whether Dr. McGough and Dr. Uderitz's opinions were considered for this purpose. Although this is not an independent basis for remand, because remand is already warranted, the ALJ may take this point into account on reconsideration.

### 2. Remaining allegations of error

Flattery also argues the ALJ's evaluation of his symptoms of pain was not supported by substantial evidence, and he further maintains that the ALJ's determination at Step Four of the evaluation process was not supported by substantial evidence. ECF No. 20 at 19–22. Because the Court has determined that the errors in ALJ's persuasiveness evaluation of the medical opinions warrant remand, the Court declines to further address these remaining claims of error. However, upon remand, the ALJ should take such claims of error into consideration. With respect to any remaining claims of error, the ALJ will be able to reconsider and re-evaluate the evidence in toto as part of the reconsideration. *See Hancock v. Barnhart*, 206 F.Supp.2d 757, 763 n.3 (W.D. Va. 2002) (noting the ALJ's prior decision has no preclusive effect, as it is vacated, and the new hearing is conducted de novo).

## IV.    <u>RECOMMENDATION</u>

It is **recommended** that the decision of the Commissioner be **REVERSED and**

**REMANDED** pursuant to 42 U.S.C. § 405(g) for further administrative review.

Molly H. Cherry
United States Magistrate Judge

October 21, 2021
Charleston, South Carolina

<u>**The parties are directed to the next page for their rights to file objections to this recommendation.**</u>

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).